UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CLARICE M. MIDDLETON,<br><br>     Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>     Defendant. | Case No. 1:19-cv-05435-CAP |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COUNT I AND STRIKE CERTAIN ALLEGATIONS IN <u>PLAINTIFF'S COMPLAINT</u>**

Defendant WELLS FARGO BANK, N.A., by its attorneys and pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure and Civil Local Rule 7.1, hereby submits Defendant's Reply in Support of Its Motion to Dismiss Count I and Strike Certain Allegations in Plaintiff's Complaint. (Dkt. No. 10.)

**<u>INTRODUCTION</u>**

In Wells Fargo's opening memorandum of law, it argued that Plaintiff's 42 U.S.C. § 1981 ("Section 1981") claim should be dismissed because Plaintiff failed to state a plausible claim for relief. The Eleventh Circuit has repeatedly held that allegations of harassment purportedly suffered during the contracting process, where the contract was fulfilled, do not establish a Section 1981 claim. In the face

of this controlling case law, Plaintiff distorts Wells Fargo's actions, draws misguided and hyperbolic analogies and hypotheticals, asserts that court holdings are dicta and attempts to distinguish case law based on minutia in the factual backgrounds in such cases, and provides a wide-spanning, inaccurate overview of the recent history of Section 1981.  Try as she may, Plaintiff's arguments do not change the undeniable truth that clear Eleventh Circuit precedent should guide this Court's analysis and compel the dismissal of Plaintiff's Section 1981 claim.

Wells Fargo further showed that Paragraph Nos. 57-83 of Plaintiff's Complaint should be stricken because they are immaterial, impertinent, and scandalous.  Plaintiff concedes that Paragraph Nos. 63-83 may be stricken and only argues that Paragraph Nos. 57-62 should remain.  Although Wells Fargo still contends that Paragraph Nos. 57-62 are irrelevant to this action, Wells Fargo does not object to this recasting of Plaintiff's Complaint.

## ARGUMENT

I. **PLAINTIFF MISCONSTRUES WELLS FARGO'S POSITION, THE LAW, AND THE FACTS OF THE CASE THROUGHOUT HER RESPONSE.**

   A. **Wells Fargo does not argue for a separate but equal standard or engage in any of the other hypotheticals posed by Plaintiff.**

The Eleventh Circuit has repeatedly held that a Section 1981 claim in a retail context can only be brought where the plaintiff is actually prevented from

completing the contract. (Dkt. 10-1 at 2-4.) Plaintiff responds to the Eleventh Circuit's interpretation of Section 1981 by presenting various rhetorical questions and hypotheticals generally imagining how the Eleventh Circuit's interpretation of Section 1981 would be applied to various historical "separate but equal" situations, none of which Wells Fargo endorses or tolerates in its branches or other operations. (Dkt 13. at 2, 7, 20.) In the course of creating these hypotheticals, Plaintiff reveals their true application to this case - none at all - when she acknowledges that "*Lopez* certainly presents a conundrum" in the situations she has created. (*Id.* at 7.) Indeed, Plaintiff twists herself into a logical knot by arguing that the Court must interpret clear Eleventh Circuit precedent through her hypotheticals to rule on Defendant's motion. Plaintiff's assertion, of course, simply is not true. The Eleventh Circuit has been clear in its interpretation of Section 1981 claims:

> Section 1981 does not provide a general cause of action for all racial harassment that occurs during the contracting process. Rather, 'in the retail context, the plaintiff must demonstrate the loss of an actual . . . contract interest.'

*Kinnon v. Arcoub, Gopman & Assocs.*, 490 F.3d 886, 892 (11th Cir. 2007) (alteration in original) (quoting *Arguello v. Conoco, Inc.*, 330 F.3d 358 (5th Cir. 2003)). Plaintiff's Section 1918 claim is based on general alleged harassment during the contracting process and thus is clearly without basis pursuant to this

3

precedent; Plaintiff's only purpose in throwing out her hypotheticals is to create a "conundrum" where none exists.

> **B.  The Civil Rights Act of 1991 did not transform Section 1981 into a cause of action for general racial harassment.**

Plaintiff inaccurately outlines the impact of the Civil Rights Act of 1991's amendments to Section 1981. (Dkt. 13 at 8-11, 17-20.) Plaintiff argues that this act changed Section 1981 to encompass all claims for racial harassment. (*Id.*) This is not so.

As explained by the United States Supreme Court:

> We held in *Patterson v. McLean Credit Union*, 491 U.S. 164 , 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), that the statutory right 'to make and enforce contracts' did not protect against harassing conduct that occurred after the formation of the contract. Under that holding, it is clear that petitioners' hostile work environment, wrongful discharge, and refusal to transfer claims do not state violations of the original version of 1981. In 1991, however, Congress responded to *Patterson* by adding a new subsection to 1981 that defines the term 'make and enforce contracts' to include the 'termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'

*Jones v. R. R. Donnelley & Sons Co.*, 541 U.S. 369, 373 (2004). The 1991 amendment was intended to ensure that Section 1981 protected employees, while "in contract," from being harassed or fired. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 450 (2008). The Supreme Court examined the House Report to the

4

amendment and stated that it intended to amend Section 1981 to encompass claims "in 'the context of employment discrimination'" and in particular, retaliation. *Id.* (citing H. R. Rep. No. 102-40, pt. 1, at 92-93, n.92 (1991)). The Supreme Court did not say, as Plaintiff now argues, that Section 1981 was amended to provide a general claim for racial harassment in any context. In the retail context, Plaintiff's claim is deficient as a matter of law because she received the full benefit from the contractual relationship with Wells Fargo when it cashed and provided her the cash value of her check; once that occurred, the contractual relationship between Plaintiff and Defendant ceased.

This Court was previously faced with a similar argument to expand Section 1981 to general racial harassment claims when it was asked to interpret whether Section 1981 "should include any intentional racial discrimination that prevents the plaintiffs from engaging in economically significant activity." *Rogers v. Elliott*, 135 F. Supp. 2d 1312, 1315 (N.D. Ga. 2001). The Court declined to make such a broad finding, concluding that "[v]irtually all federal courts that have analyzed Section 1981 claims in the retail merchandise context have required the plaintiff to show that he was actually prevented from making a purchase." *Id.* The *Rogers* holding dooms Plaintiff's Section 1981 claim, and it should be dismissed.

### C.   Plaintiff repeatedly mischaracterizes her alleged facts.

In several instances, Plaintiff mischaracterizes the facts she previously presented to the Court in her Complaint as part of her futile effort to salvage her Section 1981 claim.  For example, Plaintiff states "[c]ritically, Ms. Middleton was actually removed from the Wells Fargo branch."  (Dkt. 13 at 13.)  Plaintiff contradicted this description earlier in her response when she represented that she "calmly left the bank and waited for the police outside," (*Id.* at 4), which is also how Plaintiff described leaving the branch in her Complaint.  (Dkt. 1, ¶ 45 ("Ms. Middleton exited the branch."))  The two descriptions in Plaintiff's response are incompatible with one another and because Plaintiff's "removal" from the branch was never alleged in her Complaint, such assertion should be disregarded by the Court.  *See Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (in considering a motion to dismiss the court "need only accept 'well-pleaded facts' and 'reasonable inferences drawn from those facts.'")

In addition, Plaintiff mischaracterizes her interactions with the branch as two separate attempts to cash her check.  (Dkt. 13 at 13-14.)  Contrary to Plaintiff's detailed depiction of the alleged events of December 19, 2018 in her Complaint, Plaintiff now claims that she engaged in a second attempt to cash her check, which occurred after she had provided Wells Fargo with her check and her identification,

6

when she offered paperwork "associated with the refund check" to Wells Fargo. (*Id.* at 14, n.9.)  Plaintiff attempts to distort and analogize her transaction to the facts in a First Circuit case in which the court said that a "new contract looms" each time an individual takes an item off the shelf.  (*Id.* at 14.)  Plaintiff has not alleged any facts that plausibly demonstrate that she attempted to contract with Wells Fargo on more than one occasion on December 19, 2018 - there was no second check or second attempted transaction.  Plaintiff's Complaint clearly shows that she did not attempt to engage in a second transaction, and so this new allegation also should be ignored by the Court.  *See Dalrymple*, 334 F.3d at 996.

Finally, Plaintiff disingenuously represents to the Court that she was only able to cash her check when the police ordered Wells Fargo to do so.  In her response, Plaintiff says that she "was finally able to cash her paycheck once an officer instructed Wells Fargo that it had no basis to deny the transaction."  (Dkt. 13 at 15.)  This characterization is not present in Plaintiff's Complaint, in which Plaintiff merely alleged that "Wells Fargo did eventually cash Ms. Middleton's check."  (Dkt. 1, ¶ 47.)  And for good reason.  It is an absurd proposition that a police officer, called to a Wells Fargo branch because a customer was creating a disturbance, once there conducted the analysis required to not only determine whether a check was fraudulent, but with such conviction that the officer

7

"instructed" Wells Fargo that the check was not a counterfeit and stated, implicitly or explicitly, that the Bank should cash her check. This baseless assertion also should be disregarded by the Court. *See Dalrymple*, 334 F.3d at 996.

## II. ELEVENTH CIRCUIT CONTROLLING PRECEDENT CLEARLY WARRANTS DISMISSAL OF PLAINTIFF'S SECTION 1981 CLAIM.

Plaintiff also mischaracterizes the current state of the case law in her response. While Plaintiff "acknowledge[s] that *Lopez* may be seen as troubling for her case" (Dkt. 13 at 6) and says that the Eleventh Circuit case "presents a conundrum" (*Id.* at 7), Plaintiff insists that this Court should not apply this precedent by delving into the minutiae of *Lopez* to find distinguishable facts and dismissing the holding as "dicta." *Id.* at 2.

"[D]icta is defined as those portions of an opinion that are not necessary to deciding the case then before us, whereas holding is comprised both of the result of the case and those portions of the opinion necessary to that result by which we are bound." *Powell v. Thomas*, 643 F.3d 1300, 1304-05 (11th Cir. 2011) (internal quotation marks and citation omitted).

As summed up by the Eleventh Circuit, its ruling in *Lopez* was the following:

> Fundamentally, [Plaintiff's] claim boils down to the assertion that he was delayed and mistreated during the process of making his purchase. But this allegation, standing alone, cannot

8

> establish a § 1981 claim. As this Court has explained, § 1981 is not a general civility code.

*Lopez v. Target Corp.*, 676 F.3d 1230, 1235 (11th Cir. 2012) (citing *Kinnon*, 490 F.3d at 892). This portion of the *Lopez* opinion is necessary for the appellate court's result, and thus is part of the holding, not dicta. Further, it is clear that the court in "boil[ing] down" its ruling to a clear principle that being "delayed and mistreated during the process of making [plaintiff's] purchase … cannot establish a § 1981 claim" meant for its ruling to extend beyond the exact fact scenario in the *Lopez* case to which Plaintiff attempts to constrain it. *Id.*

Tellingly, Plaintiff never attempts to explain what she believes the holding in *Lopez* to be. If the Court were to follow all of the Plaintiff's attempts to distinguish *Lopez* from this action, it appears that *Lopez* would only bar a Section 1981 claim for general racial harassment in the retail context where:

- The plaintiff is harassed by at most one cashier (Dkt. 13 at 15);
- During the course of the harassment, the cashier tells the plaintiff that the plaintiff cannot complete her purchase at the harasser's register, but does not say that the plaintiff cannot complete her purchase generally at the store (*Id.*); and
- The store manager does not also engage in the harassing conduct.[1] (*Id.*)

---

[1] It seems that Plaintiff is still trying to frame her own theory as to the court's opinions in *Lopez* and *Arguello* regarding the identities and/or the number of

These limitations are not part of the *Lopez* opinion.

Plaintiff's discussion of the *Kinnon* case is confused as well.  Plaintiff claims that it was dicta for Wells Fargo to "assert[] that the *Lopez* Court relied on *Kinnon* to reach its ruling" and then she fails in her attempt to distinguish *Kinnon* from the current case.  (Dkt. 13 at 16-17.)

It is not dicta to say that *Lopez* relied on *Kinnon*.  In the *Lopez* opinion, the court describes *Kinnon* as "controlling precedent" and states that "[u]nder [*Kinnon*], Lopez cannot state a § 1981 claim.  Lopez was able to complete his transaction at the same Target store, buying his desired goods at the same price and using the same payment method as any other customer."  *Lopez*, 676 F.3d at 1234.

Further, Plaintiff's attempt to distinguish *Kinnon* because the alleged harassment occurred after the completion of the contract is immaterial and unavailing.  *Kinnon* holds that "Section 1981 does not provide a general cause of action for all racial harassment that occurs during the contracting process" -- which is exactly what Plaintiff is arguing for in this case.  *Kinnon*, 490 F.3d at 892.  The court further quotes approvingly the Tenth Circuit in its holding, stating "[w]e are aligned with all the courts that have addressed the issue that there must have been

---

alleged harassers required for the claims to be invalid, which are not critical aspects of the decisions. (Dkt. 13 at 15.)

10

interference with a contract beyond the mere expectation of being treated without discrimination while shopping." *Id.* (quoting *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1118 (10th Cir. 2001)).

Finally, the Eleventh Circuit actually interpreted *Kinnon*'s holding in *Lopez*, finding:

> *Kinnon* stands for the proposition that a retail customer cannot make out a claim under § 1981 unless the customer was 'actually denied the ability to engage in [some] contractual activity' protected by the statute.

*Lopez*, 676 F.3d at 1235.  Plaintiff's attempts to distinguish the factual details in *Kinnon* without grappling with the actual holding are unavailing and do not change the Eleventh Circuit precedent that controls the viability, or lack thereof, of Plaintiff's Section 1981 claim in this case.

Plaintiff's response also fails to avoid the precedential decisions in *Kinnon* and *Lopez* that clearly foreclose Plaintiff's Section 1981 claim based on general racial harassment.  This court has a "duty [] to follow circuit precedent." *Bloodworth v. Colvin*, 17 F. Supp. 3d 1245, 1251 n.3 (N.D. Ga. 2014).  This is the case even where the court has misgivings.  *Id.* (stating "whether administrative exhaustion *should* be a jurisdictional prerequisite to Title VII actions filed in this circuit is not for this Court to say" where there is Eleventh Circuit precedent on the issue) (emphasis in original).

11

Because Plaintiff has not plead sufficient facts to allege a plausible Section 1981 claim, her claim should be dismissed as a matter of law.

### III. PLAINTIFF'S ALLEGATIONS THAT SHE ABANDONED SHOULD BE STRICKEN.

Plaintiff "concedes paragraphs 63-83 may be stricken," but argues that Paragraph Nos. 57-62 should remain in her Complaint. (Dkt. 13 at 22.) By not opposing Wells Fargo's argument to strike Paragraph Nos. 63-83, Plaintiff has abandoned these allegations. *See Mihoubi v. Caribou Coffee Co.*, No. CIV.A. 105CV2441-TWT, 2007 WL 2331061, at *13 (N.D. Ga. Aug. 10, 2007). Wells Fargo does not oppose Plaintiff's position to retain Paragraph Nos. 57-62, even though it believes such allegations are irrelevant, while striking Paragraph Nos. 63-83 in her Complaint.

### CONCLUSION

For the foregoing reasons and those stated in its underlying motion and memorandum of law in support thereof, Wells Fargo respectfully requests that this Court enter an Order granting its Motion to Dismiss Count I and Strike Certain Allegations in Plaintiff's Complaint.

### CERTIFICATE OF FONT SIZE

Pursuant to Local Rule 7.1D, Defendant's counsel certifies that this reply has been prepared in Times New Roman 14-point font, one of the fonts approved

in Local Rule 5.1C.

        Respectfully submitted,

        WELLS FARGO BANK, N.A.

        By: /s/ *Frederick T. Smith*
            Frederick T. Smith
            Georgia Bar No. 657575
            fsmith@seyfarth.com
            SEYFARTH SHAW LLP
            1075 Peachtree Street, N.E.
            Suite 2500
            Atlanta, Georgia 30309-3958
            Telephone: (404) 885-1500
            Facsimile:   (404) 892-7056

        Attorney for Defendant

Date:  March 6, 2020

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CLARICE M. MIDDLETON, <br><br> Plaintiff, <br><br> v. <br><br> WELLS FARGO BANK, N.A., <br><br> Defendant. | Case No. 1:19-cv-05435-CAP |

## CERTIFICATE OF SERVICE

I certify that on March 6, 2020, I filed the foregoing **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COUNT I AND STRIKE CERTAIN ALLEGATIONS IN PLAINTIFF'S COMPLAINT** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

| | |
|---|---|
| M. Travis Foust <br> Parks, Chesin & Walbert, P.C. <br> 75 Fourteenth Street, 26th Floor <br> Atlanta, Georgia  30309 | Yechezkel Rodal <br> Rodal Law, P.A. <br> 5300 N.W. 33rd Avenue, Suite 219 <br> Fort Lauderdale, Florida  33309 |

*/s/ Frederick T. Smith*
Frederick T. Smith
Georgia Bar No. 657575
Attorney for Defendant